Our next case for argument is Evanston Insurance Company v. Blue Moon Lofts. Good morning and may it please the court, my name is Scott Kogan and I'm here on behalf of both appellants, the Structural Shop and Blue Moon. The nature of this appeal of course is the equitable estoppel doctrine. We are contending in this case that the lower court has committed an error... Mr. Kogan, you might be able to tell what the likely first question in this case is. The insurer sought a declaratory judgment and the district judge said it is entitled to one and I can't find it. Is there a declaratory judgment in this case? The insurer, the lower court granted summary judgment on behalf of Essex Insurance Company on all claims before the court. Meaning what? The judgment checks a box and says the judgment is in favor of the plaintiffs and then he doesn't provide any terms, right? As I said in the last case, we have said until blue in the face that a judgment must provide the relief to which the prevailing party is entitled. This judgment doesn't. The case is not done in the district court. Why are we here? I believe that the lower court did enter a judgment in favor of... It is a judgment that doesn't have any terms. It's like entering a document on a rule 58 form that just contains a Bronx cheer, where the judge sticks out his tongue or waggles his fingers in his nose, but doesn't end the case by providing the terms. Did anybody point this out to the judge? When he granted summary judgment we went in on another status and he entered an order... You can grant summary judgment to a defendant. A take nothing judgment doesn't need any terms beyond the fact that the defendant wins. A judgment in favor of the plaintiff must contain the relief to which the prevailing party is entitled. This is not something you can argue about. It's as straightforward as can be. This judgment doesn't do that. I listened to the prior argument and I understand what you're saying, your honor. So, what do we need to do now? I will make my argument on appeal and we will seek the nature of that judgment from the lower court. Why didn't you go to the district judge and say, please enter a proper judgment. I'll be asking this question of Mr. Walton too. This should not wait for oral argument in the court of appeals. I think what people are doing, I'll offer you a guess as to why it's happening. I think what people are doing is that in this particular case you're reading Judge Lee's opinion. And you read it and you think, well, we know who won and we know who lost and we know that he just expressly says that Essex, you know, he declares that Essex Insurance Company has no duty to indemnify. And then without thinking about, well, is there a separate rule 58 judgment? What's the actual judgment sheet say? Everybody just heads to the 27th floor. That's my guess as to how it's happening. It doesn't make it right, but that's my guess. In his opinion. There's another thing that's happening. And just in this district, Rule 58 says it is mandatory that the district judge personally review the terms of every judgment except for defendant wins outright. There's no sign that the district judge has reviewed the judgment in either the last case or this one. Judges who insist that others turn square corners with the law need to do it themselves. Understood. Is this my only chance for argument then? It is your only chance for argument. Then I will proceed. The heart of this issue is that the district court erred in granting summary judgment by failing to consider equitable estoppel. It ruled on the prejudice prong that there was no material issue of fact, but it is our contention here in this case. There was an issue of fact as to prejudice because we did show some prejudice at the summary judgment level. And in fact, we showed that there was some control. That control begins in May of 2014 when the first settlement offer for $25,000 was made by Blue Moon to Essex. At that time, Essex's insurance adjuster Melanie Brown instructed Mr. Palandek to reject the settlement. She wrote in an email that they should go ahead and litigate the case, that is, file a 103B motion because it would be cheaper, less expensive than the $25,000 at issue, both the $25,000 offer and presumably the $25,000 policy. At that time, she was asserting control. Essex was asserting control of the case. It is important to note that she responds first to Mr. Palandek's request on whether the case should be settled. And she says not to settle. She does not say we need to hear from the insured. She does not say we should wait. She does not wait to hear from the insured. She responds first. And then the insured does, Mr. Veach, does respond and say, I'm a firm no as to the settlement as well. But that agreement is incidental because at that time, Mr. Veach is completely under the understanding that he has full defense and indemnity from Essex Insurance Company, that he has coverage at that time because there's been no reservation of rights letter, that the case has continued for two years without a reservation of rights letter. And the lack of reservation of rights, I submit to you, is control as well because the insured in this case does not know and does not have an understanding that he could not have coverage if there's good service. Mr. Kogan, let me get you, let me ask you to react to what I thought in reading this. Your argument seems, what seems odd about it to me is that the structural shop just up and settled with Blue Moon, right, in that, what was that, like April, March-April 2015? Correct. Not clear to me that Essex had any role in that whatsoever, at least from looking at the record here. Yes, that was after Essex fired the attorney and refused to pay a bond on appeal and so at that time he was unrepresented. Did you guys tell Essex though, hey look, we're getting out of this, we're getting out of this, we're going to sign our rights to Blue Moon and good luck, but we're done? That's what happened. I know, did you, is that documented anywhere in the record? There was an assignment, the assignment is part of the record, it's agreed upon now. But I, here's my, here's the upshot for me of my, the observation I had is that I thought the first time that Essex really seemed to take control or have control is when they told Mr. Palandek, hey look, we've got new counsel to deal with this on appeal in the Illinois State Court, we're going to be in the front seat, you're now going to be in the back. That's the first fact that I see that you could objectively point to to say that there's some, you know, there's some act of control being asserted here. Before that, the parties seem to be going back and forth and they're aware of what's happening, but it just seems hard to read the record that Essex is calling the shots. It's clear and there's no dispute that as early as May of 2014, Essex is taking charge. They're giving a direction to Palandek to litigate the case. When you say clear, will he, will your colleague agree with that? Your adversary? I don't, I don't see how he can dispute it. It's in an email that she writes. We'll see in a minute here. But I submit to you that at that time, she is giving direction to Palandek and he is doing what she says. And there's no, there's, and when she gives that order, there's nothing from the insured. The insured responds an hour later and, and agrees. But at that time, he has no knowledge of, he believes he's being covered, so he has nothing to lose. This is all to the insurance company's advantage, I submit to you, because they have nothing to lose at this time. If there's, if there's proper service, then they have no duty to cover. That's their reasoning. If there is no proper service, but they win the motion to dismiss, then they get a free, they get free litigation at that time. They don't have to pay for the defense because it's still within the deductible. But an even more, that in itself, in and of itself, is evidence of control. And on summary judgment, that is a material issue because she is making direction and he is following direction. But after that time, then there are two more attempts by Blue Moon to try to settle the case. In July, there is the, in July, evidence is sent to Blue Moon, to, I'm sorry, to Essex. July 14th? The end of July, July 29th, Blue Moon sends the proof of proper service to Essex. And that is to Mr. Palandek. Mr. Palandek testified that he believed that he informed Essex of the proper service. So at that time, Essex has knowledge of the proper service. Palandek and Essex, Palandek testified that he spoke with Brown on several occasions, that he had other cases with Brown, that they were paneled attorneys. And so they're speaking with each other about this. And there's a reasonable presumption at that time that Essex knew that there was proper service and there was still the opportunity to settle the case before the motion to reinstate, which the state court judge would reinstate. And yet that was not done. That was not done. Nothing was done. Now that is an ultimate issue of control, I submit to you, because Mr. Veach testifies that he doesn't have knowledge of Blue Moon's continued willingness to settle the case. So those are two examples of control before the attorney is fired, before the appeal occurs. I'd like to reserve my remaining time for rebuttal. Thank you. Certainly, Mr. Kogan. Mr. Wohl. Good morning, Your Honors, and may it please the court. I'm Jonathan Walton, counsel for Evanston Insurance Company, successor in interest to Essex Insurance Company. I may as well begin with the issue today regarding the judgment. Yes, indeed. Your brief says, Hellen's jurisdictional statement is complete and correct. You're representing that there was a final decision in the district court, and there plainly wasn't. What's gone wrong here? Your Honor, we were under the impression that the court's statement in the memorandum opinion that Essex Insurance Company has no duty to indemnify the structural shop for the default judgment. So you think an opinion and a judgment are the same. What gave you that impression? Solely the subsequent entry of a judgment. Did you do any legal research on that question? No, Your Honor. You... No, the tiniest amount of legal research would have revealed that this circuit has said that's not true, that the judgment has to contain the terms of relief, or it's not final. We expect the lawyers on both sides to ask the district judge to fix problems and to do legal research before saying off the top of their head that something is or is not within our jurisdiction. Certainly, Your Honor. Talk first, research later is not an acceptable approach. Understood. I will now address appellant's arguments. First of all, I'd like to address these communications from the Essex Claims Examiner, which seem to be the focus of the appellant's argument. So appellants rely on two communications throughout the entirety of the litigation and claim that these were orders, directives, instructions from Essex Claims Examiner, and that they were not directives as to the defense strategy. The record does not support this contention. It is undisputed that these emails from the Claims Examiner came in response to correspondence from Mr. Palandek, who was the attorney for the structural shop, who was the attorney selected by the structural shop, and who, when the matter was first tendered to the insurance company, was already representing the structural shop as their chosen counsel. Mr. Palandek would make recommendations that he would send to both the structural shop and to the insurance company to check with both of them for the go-ahead. So the evidence shows that the Claims Examiner was responding to those recommendations, voicing the company's approval. What is undisputed is the only directive which was issued by any party came from the structural shop, who said, I am firmly a no to settlement. No similar communication came from the insurance company. Moreover, under the policy, the structural shop had control over settlement and had to approve any settlement. Counsel for Blue Moon deposed Mr. Palandek and asked him that very question. Did you take any direction from Essex? And he denied doing so. He said, I was defending the structural shop. I was providing contemporaneous reports to the carrier and to the structural shop. Whatever direction I took in the case was the product of that consensual interface. Now another issue is that Blue Moon states over and over that there is some evidence of control, or that he's created a question of fact as to who controlled the litigation. Well, that is not sufficient here. It is undisputed that prejudice must be proven by clear, concise, and unequivocal evidence. That standard cannot be ignored on summary judgment. This court in the Stage 2 case found that evidence was not sufficient to establish prejudice by clear, concise, and unequivocal evidence, and on that basis, affirmed the decision of the granting summary judgment by the district court. Judge Shader concluded at Evanston Insurance Company versus Security Assurance Company that the standard requiring proof of prejudice by clear, concise, and unequivocal evidence must guide the determination of whether a material factual dispute exists. So Mr. Walton, is it your view then that the moment that we first see control as a factual matter in the case is in that March-April 2015 time period when your client tells Mr. Palandak, hey look, we're going to take over on this appeal and hire new counsel. We want you involved, but we're going to guide it going forward. I agree that that is the first time we have some clear, concise evidence of control. So did any, was there, let's, I mean I read that as there's an assertion of control or an act of control being asserted. Did they ever then exercise, was there ever any exercise of control? No Your Honor. At that point, the insurance company decided to take over the appeal and try and have that reinstated default judgment vacated again so that the matter would go back to litigation. The appeal was not, after the notice of appeal was filed, the structural shop reached its settlement with Blue Moon and so the matter was resolved and there was no appeal pursued at that point. As the district court concluded, Essex's later retention of appellate counsel does not establish that there was control throughout the litigation of this case. This was only done after the vacated default judgment was then reinstated and only after Essex had issued a reservation of rights letter explaining that there would be no coverage for that default judgment, yet it would continue to pursue the appeal to have that default judgment vacated once again. And I think that goes to another issue which Blue Moon's counsel has raised, which is that his position and theory that Essex the whole time was just looking for a way out of coverage. Well, by taking over the appeal, by handling the appeal, what Essex was trying to do was have the court's decision reverse, the court's decision that Blue Moon in fact served the structural shop back in 2002. So if Essex was successful in that appeal, the result would have been that the parties were back into litigation, litigating a claim first made in 2012, which Essex had already agreed it would provide a defense to without reservation. But doesn't Mr. Kogan have a decent point when he says you all waited an awfully long time to send a reservation of rights? No, Your Honor. First of all, a mere delay in issuing a reservation of rights letter is not sufficient to establish prejudice by clear, concise, and unequivocal evidence. That was the court's holding in the stage two case. What is necessary to prove prejudice is control of the litigation, not solely a delay in issuing a reservation of rights letter. Blue Moon and the structural shop simply have not produced that evidence of control, and it is undisputed that the attorney who represented the structural shop in the litigation was engaged by the structural shop before the case. Mr. Palandek was the structural shop's registered agent. He represented the structural shop in other third-party claims, also in contract matters, professional responsibility matters, and had served as the structural shop's counsel since 2004. Appellants argue in their brief that at some point in the litigation, Mr. Palandek changed his status from the structural shop's counsel of choice to the insurer-retained counsel, and there's simply no evidence of that. I will also point out to the court that the district court's decision on equitable estoppel can be affirmed on other grounds as well. In addition to the requirement of the insurance, there's the requirement that a reliance by the insured on any act or conduct of the insurer must be reasonable. The appellants cannot meet that essential element as well. Party claiming the benefit of estoppel must prove that they reasonably relied upon the acts or representations of the insurer, and that the party did not have knowledge of or convenient means of learning the true facts themselves. In the estoppel context, an insured cannot shut his eyes to obvious facts or neglect to seek information that is easily accessible and then charges ignorance to others. Illinois law charges an insured with the duty to read the insurance policy, and the insured is charged with knowledge of the contents of the policy. In Young v. Allstate Insurance Company, the Illinois appellate court rejected the claim for estoppel because a simple reading of the policy would have revealed the coverage was not afforded. A similar conclusion was reached by this court in level three communications where the court concluded that the insured could read the insurance contract as well as the insurer, and there, staring it in the face, was a clause that clearly barred coverage. The claims made nature of this policy is clearly stated both in the declarations page, there's a statement at the top, this policy provides claims made coverage, coverage for claims made during the May 2012 to May 2013 policy period. It's also stated in the insuring agreement. Additionally, the record shows that the structural shop was advised both by its counsel, Mr. Palandek, and its insurance broker that they did not believe there would be coverage under a 2012 claims made policy for a default judgment entered in 2009. Additionally, the appellants must establish actual or constructive notice in order to prove equitable estoppel, and we believe that is not met as well. If there are no further questions from the court, I... Thank you, Mr. Walton. Anything further, Mr. Kogan? Thank you, Ron. The key here is that there is evidence of control, strong evidence of control, early, as early as May of 2014, and particularly after July 29, when Blue Moon sends the important information to Mr. Palandek. Mr. Veach denies that he was ever informed about that information. Basically, his testimony is that the attorney and the communications go dark on him after that time, so he does not know about the crucial opportunity to be able to settle the case after July of 2014, and after the motion to reinstate the default judgment was filed, and during that time, until Judge Brennan entered the decision to reinstate the default judgment. Previously, she had notified counsel that she may reinstate the default judgment if good service had been shown. Good service was shown in July, but Blue Moon was nevertheless willing to still settle the case. They reached out three times within three months to settle. In May, a $25,000 offer. In June, after that offer had been rejected, and even in July... To who? Palandek? Yes, to Palandek. Essex cannot say that Palandek was not their attorney. They fired Essex. They could not fire Essex if he was not their attorney. You will also see in the record that Palandek did a great deal of business with Essex, that he had cases pending with Essex, that he spoke with Melanie Brown. He called, he referred to her as Mel. They were friends about other cases, and about this case during both the summer and fall. There's only two things, Your Honors. I'm not sure what you're saying. Are you saying that Palandek was representing both TSS and Essex? Was the attorney for it, yes. Yes, he was representing TSS and Essex, and there was a conflict of interest, a clear conflict of interest, since March of 2013, because at that time there was good evidence of an invoice from a special process server that good service had been made for March of 2013. So Essex knew or should have known at that time that there was a good probability that the default judgment could be reentered, that there was evidence of good service. Now, if you go again to May, Melanie Brown is giving direction and orders to Palandek, and he's following it. He's doing what she says. And then after that time, she tells him to continue litigation by filing a petition to reconsider, and at the end, they fire him. So there is some evidence of control here. We do not have to prove on summary judgment. We do have to ultimately prove that it's clear and concise, and I've given you some instances where it could be shown as clear and concise. But on summary judgment, if we can show there's an issue of fact of control, and I believe that those many instances that I've covered and that we cover in the brief are factors that show that there is some control and that after July of 2014, there is absolute control by Essex. The other key factor that you have to consider in this case is that because there's no reservation of rights, that is a measure of control because the insured, Veach, doesn't know, does not know that he may not be indemnified. He believes he's going to be indemnified because no one's told him other, no one from Essex has told him anything other than he will be indemnified. So he can't make a rational decision on this issue. If he had known that if the default judgment could be entered and there was proof of good service, then he would have settled the case for $25,000. It's a nuisance value. He would have been able to settle the case, and he wouldn't be risking getting hit for over a million dollars. And that's what happened here. Essex, I submit to you, was gambling without any risk because they, they win either way. There's a conflict of interest under Maryland v. Peppers. They have to basically either waive the coverage. Thank you, counsel. Thank you. We will issue an order governing what has to happen next in this case to produce appellate jurisdiction.